**CASE NO. 22-1298**

# IN THE

# United States Court of Appeals

## FOR THE SIXTH CIRCUIT

———————————

KYLE BRANDON RICHARDS,

*Plaintiff - Appellant,*

v.

THOMAS PERTTU, Residential Unit Manager, also named as Unknown Perta in the complaint also known as Perttu,

*Defendant - Appellee.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN (MARQUETTE)
2:20-cv-00076

———————————

**SUPPLEMENTAL BRIEF OF APPELLANT
KYLE BRANDON RICHARDS**

———————————

J. Scott Ballenger
Sean Gray (Third Year Law Student)
Lauren McNerney (Third Year Law Student)
Appellate Litigation Clinic
UNIVERSITY OF VIRGINIA SCHOOL OF LAW
580 Massie Road
Charlottesville, VA 22903
202-701-4925
sballenger@law.virginia.edu

*Counsel for Appellant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... ii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..........................................v

INTRODUCTION ...............................................................................1

ARGUMENT ....................................................................................2

    I.    JURY FACT-FINDING IS ALWAYS REQUIRED WHEN MERITS ISSUES ARE ENTANGLED WITH THRESHOLD ISSUES....................................................................2

    II.    THE COMMON LAW ANALOGUE TO PLRA EXHAUSTION IS AN AFFIRMATIVE DEFENSE RAISED BY A PLEA IN BAR, WHICH WOULD HAVE REQUIRED JURY FACT-FINDING—PARTICULARLY WHEN THE FACTS ARE INTERTWINED.............................................6

    III.    PRECEDENT AND FUNCTIONAL CONSIDERATIONS CONFIRM A RIGHT TO JURY TRIAL ON DISPUTED ISSUES OF FACT RELEVANT TO EXHAUSTION WHEN THE FACTS ARE INTERTWINED WITH THE MERITS.................12

CONCLUSION ...............................................................................15

CERTIFICATE OF COMPLIANCE......................................................16

CERTIFICATE OF SERVICE .............................................................16

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .............17

# TABLE OF AUTHORITIES

## Cases

*Albino v. Baca*,
747 F.3d 1162 (9th Cir. 2014) ............................................................ 3

*Allison v. Citgo Petrol. Corp.*,
151 F.3d 402 (5th Cir. 1998) .............................................................. 14

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................ 15

*Battle v. S.C. Dep't of Corr.*,
2019 WL 926415 (D.S.C. Feb. 26, 2019) ......................................... 14

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959) ........................................................................ 12

*Brown v. Slenker*,
220 F.3d 411 (5th Cir. 2000) .............................................................. 4

*Bryant v. Rich*,
530 F.3d 1368 (11th Cir. 2008) ........................................................... 6

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
526 U.S. 687 (1999) .......................................................................... 1

*Daum v. Doe*,
2016 WL 3411558 (W.D.N.Y. June 22, 2016) ................................... 14

*Dillon v. Rogers*,
596 F.3d 260 (5th Cir. 2010) ............................................................ 13

*Fastener Corp. v. Spotnails, Inc.*,
291 F. Supp. 974 (N.D. Ill. 1968) ....................................................... 4

*Fireman's Fund Ins. v. Railway Express Agency, Inc.*,
253 F.2d 780 (6th Cir. 1958) .............................................................. 5

*Grand Lodge Bhd. Of R.R. Trainmen v. Randolph*,
57 N.E. 882 (1900) ............................................................................ 9

*Gunn v. Ayala*,
2023 WL 2664342 (S.D.N.Y. Mar. 28, 2023) ................................... 13

*Jones v. Bock*,
    549 U.S. 199 (2007) ............................................................. 3

*Kierulff Assocs. v. Luria Bros. & Co.*,
    240 F. Supp. 640 (S.D.N.Y. 1965) ....................................... 4

*Land v. Dollar*,
    330 U.S. 731 (1947) ............................................................. 5

*Lee v. Willey*,
    789 F.3d 673 (6th Cir. 2015) ....................... 2, 6, 10, 11, 13

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) ............................................................. 1

*Messa v. Goord*,
    652 F.3d 305 (2d Cir. 2011) .......................................... 13, 14

*Njos v. Argueta*,
    2015 WL 3405170 (M.D. Pa. May 26, 2015) .................. 14

*Parsons v. Bedford, Breedlove & Robeson*,
    28 U.S. 433 (1830) ............................................................. 15

*Pavey v. Conley*,
    544 F.3d 739 (7th Cir. 2008) ........................................... 13

*Rickett v. Orsino*,
    2013 WL 1176059 (S.D.N.Y. Feb. 20, 2013) .................. 14

*Ross v. Bernhard*,
    396 U.S. 531 (1970) ........................................................... 12

*Sanchez v. Nassau County*,
    2023 WL 2457855 (E.D.N.Y. Mar. 11, 2023) ................. 14

*Scott v. Neely*,
    140 U.S. 106 (1891) ........................................................... 12

*Small v. Camden County*,
    728 F.3d 265 (3d Cir. 2013) ............................................ 13

*Smithers v. Smith*,
    204 U.S. 632 (1907) ............................................................. 5

*Stephens v. Venetozzi,*
    2020 WL 7629124 (S.D.N.Y. Dec. 21, 2020) ...............................................13, 14

*Wakeley v. Giroux,*
    2014 WL 1515681 (M.D. Pa. Apr. 15, 2014) ................................................... 14

*Woodford v. Ngo*,
    548 U.S. 81 (2006) ......................................................................................... 3

**Rules**

Fed. R. Civ. P. 8 ................................................................................................ 10

**Other**

5C Wright & Miller, Federal Practice and Procedure (3d ed. 2004)....................4, 6

8 Moore's Federal Practice § 38.34[1][c][i] (3d ed. 2009)....................................3, 5

A.C. Umbreit, *Outline of the Law of Common Law Pleading*,
    4 Marq. L. Rev. 130 (1920) ................................................................... 9

Benjamin J. Shipman, Handbook of Common-Law Pleading
    (3d ed. 1923)......................................................................6, 7, 9, 10, 11

George L. Clark, Common Law Pleading (1931).................................................7, 9

James Oldham, Trial by Jury: The Seventh Amendment and Anglo-American
Special Juries (2006)...........................................................................................8

John Jay McKelvey, *Principles of Common-Law Pleading* (1894) ...................... 6-9

Joshua S. Moskovitz, Note, *The Usual Practice: Raising and Deciding Failure to
Exhaust Administrative Remedies as an Affirmative Defense under the Prison
Litigation Reform Act*, 31 Cardozo L. Rev. 1859 (2010) ................................. 4, 7-9

Michael G. Collins, *Jurisdictional Exceptionalism*,
    93 Va. L. Rev. 1829 (2007)................................................................... 4

Richard Ross Perry, Common-Law Pleading: Its History and Principles
    (1897)........................................................................................7, 8, 11

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiff-Appellant Kyle Richards requests oral argument. Argument would aid the Court in evaluating several important questions, including whether the Seventh Amendment requires a jury to decide disputed questions of fact relating to exhaustion under the Prison Litigation Reform Act when exhaustion is intertwined with the merits of the underlying dispute.

**INTRODUCTION**

This Court requested supplemental briefing on "[w]hether the Seventh Amendment requires a jury to decide disputed questions of fact relating to exhaustion under the Prison Litigation Reform Act when exhaustion is intertwined with the merits of the underlying dispute." Section 1983 is clearly analogous to causes of action that were "tried at law at the time of the founding." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376 (1996). So the Seventh Amendment question is "whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791." *Id.* "We look to history to determine whether the particular issues, or analogous ones, were decided by judge or by jury in suits at common law at the time the Seventh Amendment was adopted. Where history does not provide a clear answer, we look to precedent and functional considerations." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 718 (1999).

The case law frequently analogizes PLRA exhaustion to the common law plea in abatement. That analogy is flawed for multiple reasons. Pleas in abatement could not contradict the allegations of the plaintiff's complaint, could only allege temporary, curable infirmities, and would be resolved by the judge only if the plaintiff conceded the facts by demurrer. In typical PLRA exhaustion cases, the better analogy would be to a plea in bar either pled as a traverse (if it contested the plaintiff's facts) or met by a responding traverse (if it pled facts the plaintiff contested). Either way, a jury trial

1

would have been triggered. And in any event the precise common law analogy matters little. There is *no* context (including subject matter jurisdiction) in which the common law would have tolerated judge fact-finding on issues intertwined with the merits, if the plaintiff had requested a jury. Kyle Richards requested a jury trial, R.9, PageID#10, and the exhaustion issues in this case are clearly intertwined with (indeed, almost indistinguishable from) the core merits of his § 1983 claim. Nonetheless the exhaustion issue was referred to a magistrate judge—who found, after weighing the credibility of witnesses, that the grievance procedures were not "effectively unavailable." R.157, PageID#787. The district court's decision affirming those findings violated the Seventh Amendment under any reasonable understanding of the history.

## ARGUMENT

## I.   JURY FACT-FINDING IS ALWAYS REQUIRED WHEN MERITS ISSUES ARE ENTANGLED WITH THRESHOLD ISSUES.

In *Lee v. Willey*, this Court held that "exhaustion under the PLRA is analogous to other threshold issues of judicial administration," like personal jurisdiction and venue, "that 'courts must address to determine whether litigation is being conducted in the right forum at the right time.'" 789 F.3d 673, 678 (6th Cir. 2015) (citation omitted). That conclusion is highly debatable, but the correct characterization of PLRA exhaustion likely does not matter when, as here, the facts relevant to exhaustion are intertwined with the merits.

There once was a serious argument, based on the PLRA's language and purposes, that exhaustion should be treated as a jurisdictional precondition to suit in any court. But the Supreme Court has squarely rejected that argument, holding instead that "failure to exhaust is an affirmative defense under the PLRA." *Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 101 (2006) (concluding that "the PLRA exhaustion requirement is not jurisdictional"). The Supreme Court also criticized this Court for inventing special pleading requirements, emphasizing that special procedures "must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." *Jones*, 549 U.S. at 217 (citation omitted). Exhaustion, the Court explained, is an ordinary affirmative defense that must be raised by answer under Rule 8. *Id.* at 212. And exhaustion conspicuously *is not* one of the true threshold issues, like jurisdiction or venue, that may be raised by motion under Rule 12(b). Accordingly, courts that previously entertained "unenumerated" 12(b) motions challenging failure to exhaust have abandoned that practice. *See, e.g.*, *Albino v. Baca*, 747 F.3d 1162, 1168–69 (9th Cir. 2014).

But even if the analogy to threshold preconditions were stronger, it would not justify judicial fact-finding when the disputed facts are intertwined with the merits. It is a well-accepted principle that even disputes about *jurisdictional* facts should be deferred to the jury when they are intertwined with the merits. *See* 8 Moore's Federal Practice § 38.34[1][c][i] (3d ed. 2009) ("Trial on Merits Required When Jurisdictional

Determination Depends on Determination of Merits.").[1] Factual questions bearing on both personal jurisdiction and venue are also reserved for trial and submitted to the jury when they are intertwined with the core merits of the case.[2]

In early nineteenth-century patent litigation, for example, federal "jurisdiction could ordinarily be based on the plaintiff's pleading of a duly issued patent and title to it, plus an allegation of infringement," but "factual inaccuracies or falsehoods in the allegations giving rise to federal jurisdiction would typically be intertwined with the merits of the patent claim." Michael G. Collins, *Jurisdictional Exceptionalism*, 93 Va. L. Rev. 1829, 1853–55 (2007) (collecting cases). "Consequently, there was far less opportunity to raise a separate pretrial challenge to jurisdictional facts in federal question cases." *Id.* at 1855.

---

[1] *See also* 5C Wright & Miller, Federal Practice and Procedure § 1350 (3d ed. 2004) ("The court may postpone a decision until evidence is submitted at trial if the jurisdictional issue is intertwined with the merits of the case."); Joshua S. Moskovitz, Note, *The Usual Practice: Raising and Deciding Failure to Exhaust Administrative Remedies as an Affirmative Defense under the Prison Litigation Reform Act*, 31 Cardozo L. Rev. 1859, 1899 n.248 (2010) (Moskovitz) (collecting sources).

[2] *See, e.g.*, *Brown v. Slenker*, 220 F.3d 411, 419 (5th Cir. 2000) ("[Personal j]urisdiction remains intertwined with the merits, and on remand both must be decided at a new trial, based on valid jury findings."); *Kierulff Assocs. v. Luria Bros. & Co.*, 240 F. Supp. 640, 642 (S.D.N.Y. 1965) ("Where venue and the merits of an action are intertwined, it is often better to wait until trial where a full presentation of the issue can be made, rather than rule preliminarily on a motion."); *Fastener Corp. v. Spotnails, Inc.*, 291 F. Supp. 974, 976 (N.D. Ill. 1968) ("[T]he venue question merge[d] with the issue of infringement on the merits . . . .").

Or consider *Land v. Dollar*, 330 U.S. 731, 733 (1947). A steamship company's stockholders sued the U.S. Maritime Commission to recover stock previously given to the commission. The Supreme Court held that the district court erred in deciding a jurisdictional sovereign immunity question, because "this is the type of case where the question of jurisdiction is dependent on decision of the merits." *Id.* at 735. "[I]f the allegations of the petition [were] true, the shares of stock never were property of the United States," so the district court had "jurisdiction to determine its jurisdiction" and should instead have "proceed[ed] to a decision on the merits." *Id.* at 738–39.

This Court, in *Fireman's Fund Ins. v. Railway Express Agency, Inc.*, 253 F.2d 780, 782–83 (6th Cir. 1958), similarly held that trial was necessary when the disputed jurisdictional question—whether the plaintiff could recover enough to establish federal jurisdiction—was intertwined with the merits. "Where the jurisdictional issue as to amount in controversy can not be decided without the ruling constituting at the same time a ruling on the merit of the case, the case should be heard and determined on its merits through regular trial procedure." *Id.* at 784; *see also Smithers v. Smith*, 204 U.S. 632, 646 (1907) (same).

The better understanding therefore is that, "[i]n a case in which there is a right to jury trial, a dismissal for lack of jurisdiction that improperly summarily decides the substantive issues also violates the parties' Seventh Amendment rights." 8 Moore's Federal Practice § 38.34[1][c][i]. And if true jurisdictional facts must be submitted to

the jury when intertwined with the merits, then facts relevant to PLRA exhaustion certainly must be.

## II. THE COMMON LAW ANALOGUE TO PLRA EXHAUSTION IS AN AFFIRMATIVE DEFENSE RAISED BY A PLEA IN BAR, WHICH WOULD HAVE REQUIRED JURY FACT-FINDING— PARTICULARLY WHEN THE FACTS ARE INTERTWINED.

*Lee* followed precedent from other circuits analogizing exhaustion to issues traditionally raised by "pleas in abatement" at common law. *See, e.g.*, *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008) ("Exhaustion of administrative remedies is a matter in abatement, and ordinarily does not deal with the merits." (cleaned up) (quoting 5C Wright & Miller § 1360, at 78 n.15)). That analogy is strained and certainly cannot justify judicial fact-finding when facts intertwine with the merits.

Understanding why requires some background in common law pleading. At common law, defendants could dispute a plaintiff's declaration (*i.e.*, complaint) by demurrer or plea. John Jay McKelvey, Principles of Common-Law Pleading § 93, at 68–69 (1894) (McKelvey). A demurrer, like a modern-day 12(b)(6) or purely legal 12(b)(1) motion, accepted the facts as alleged and "raise[d] a question of law for the determination of the court" about the declaration's sufficiency. Benjamin J. Shipman, Handbook of Common-Law Pleading §§ 8–9, at 28 (3d ed. 1923) (Shipman). The plea in traverse alleged a straightforward denial of the declaration's factual allegations and triggered a trial. "Where an allegation is traversed, or denied, it is evident that a question is at once raised between the parties; and it is a question of fact . . . ." Shipman

§ 167, at 302. The traversing defendant just had to include the "appropriate formula" by "proposing a trial by the country—that is, by a jury." *Id.*; *see also* Richard Ross Perry, Common-Law Pleading: Its History and Principles 179–80 (1897) (Perry). "[T]he tender and acceptance of an issue of fact close[d] all pleading in the action, as there [was] then nothing left but a trial, which [disposed] of the action on its merits." Shipman § 15, at 32–33.

The plea in abatement was one of the "dilatory pleas," which raised a class of common law defenses that merely "delay[ed] the plaintiff's action instead of dealing with the merits of his claim." George L. Clark, Common Law Pleading § 59, at 131 (1931) (Clark); McKelvey § 132, at 93 ("Judgment upon the dilatory plea was not final, . . . it did not determine the case upon the merits.").[3] A plea in abatement, if successful, "dispose[d] of the particular suit" but allowed the plaintiff to "commence anew upon the same cause of action in the same court" so long as the plaintiff avoided the mistake that caused the original abating. McKelvey § 131, at 92. Typically, a plea in abatement related to the parties' identities, a misnomer in the declaration of facts, or a defect in the plaintiff's writ. *Id.* §§ 134–135, at 95; Moskovitz, at 1885. Defects in

---

[3] The other dilatory pleas were pleas to the jurisdiction and pleas in suspension of the action. Clark § 59, at 132. Pleas to the jurisdiction attacked a court's subject matter or personal jurisdiction, disposing of the case entirely before that court if successful. McKelvey §§ 131, 134, at 92, 95. Pleas in suspension of the action sought to identify the plaintiff's temporary incapacity to bring suit. *Id.* § 131, at 92; Clark § 60, at 134; Shipman § 230, at 400.

the plaintiff's writ included "wrong venue," that the "action was brought prematurely," that "the same claim was pending in another court," that "the parties were misnamed," or that "a necessary party was not joined or . . . was misjoined." Moskovitz, at 1885. Unlike a traverse, a plea in abatement did not request a specific mode of trial—it ended instead with a prayer for judgment. Perry, at 176. And because the plea set out new affirmative facts, the common law afforded the plaintiff the choice to demur or plead in response. McKelvey § 132, at 93.

The analogy between PLRA exhaustion and common law prematurity defects raised by a plea in abatement is strained for multiple reasons. First, if pleading the facts supporting a matter in abatement would have required the defendant to contradict the plaintiff's declaration, then the defendant's plea would have been regarded as a traverse. "The word traverse . . . is synonymous with the word denial. Where the defendant intends to rely for his defense upon the fact that the allegations contained in the declaration as to the subject matter of the action are untrue, he must put in the plea known as a traverse." McKelvey § 185, at 118. And if a defendant was compelled "to traverse the plaintiff's declaration, then . . . the jury must determine *the law as well as the facts involved therein*." Perry, at 275.[4] Therefore in a case (like this one) where the facts relevant to a threshold defect were intertwined with the merits, it would not even

---

[4] Juries used to have a more prominent role in deciding legal issues. *See* James Oldham, Trial by Jury: The Seventh Amendment and Anglo-American Special Juries 25–31 (2006). While that function was constrained by the time the Seventh Amendment was ratified, the jury's core fact-finding role is clearly protected.

have been possible to frame the issue for a purely judicial decision at common law. No more is necessary to decide this case.

Second, it is far from clear that a judge could have decided factual disputes raised by a plea in abatement, even if the disputed facts were not intertwined with the core merits of the case. Pleas in abatement typically tendered an issue of law properly "eliminated on demurrer" by the judge. A.C. Umbreit, *Outline of the Law of Common Law Pleading*, 4 Marq. L. Rev. 130, 133 (1920). But if the plaintiff *did not* demur, "[t]here is extensive historical support that a factual dispute on a matter in abatement [could also be] decided by the jury . . . as documented in civil cases, in criminal cases, and in numerous treatises." Moskovitz, at 1896 & nn.234–36 (collecting sources supporting jury resolution of fact disputes posed by various dilatory pleas).

Third, the dilatory pleas (including abatement) "did not determine the case upon the merits." McKelvey § 132, at 93. A plea in abatement merely "delay[ed] the plaintiff's action instead of dealing with the merits of his claim." Clark § 59, at 131. By definition, therefore, a plea in abatement could not present an argument that the plaintiff's claim was permanently barred. Matters in abatement "could only go so far as to defeat the present action, and not to demonstrate that the plaintiff was permanently disabled from bringing the claim." Moskovitz, at 1886. Any plea in abatement based on a prematurity defect necessarily alleged that the action was *curably* premature. *See, e.g.*, Shipman § 225, at 390 n.18 (citing *Grand Lodge Bhd. of R.R.*

9

*Trainmen v. Randolph*, 57 N.E. 882 (1900), as an example of a plea in abatement alleging "failure to exhaust remedies provided in [a] contract"). In most PLRA cases, however, the very short prison grievance timelines will have expired long before suit, so a finding of non-exhaustion will permanently bar a prisoner-plaintiff's claim. *See id.* n.174 (collecting examples).

Those problems cast significant doubt on *Lee v. Willey* and the national case law analogizing exhaustion to matters in abatement. We believe the better analogy, in most exhaustion cases, would be to a common law plea in discharge.

In common law terms, an affirmative defense that would permanently end the litigation would have been raised either by demurrer or by a "plea in bar." Pleas in bar could be pled negatively, as a traverse denying the factual allegations, or affirmatively, as a confession and avoidance admitting the facts but denying their legal effect by alleging new facts. Shipman § 197–199, at 348. Pleas in confession and avoidance were divided into two categories: pleas in justification or excuse and pleas in discharge. *Id.* Pleas in discharge included bankruptcy, release, payment, and the statute of limitations—all of which alleged that the plaintiff's cause of action had "been discharged by some matter subsequent, either of fact or of law." *Id* § 198(b), at 348; *id.* § 199, at 350; *cf.* Fed. R. Civ. P. 8(c)(1).

Like a statute of limitations issue, an exhaustion defect arises *after* a § 1983 claim accrues and therefore is more analogous to a matter in discharge than in

abatement. And a judge would never have decided disputed facts posed by a plea in discharge. If the plea contained a traverse disputing the plaintiff's facts, the issue was joined and a jury trial was triggered. If the plea was instead framed as a confession and avoidance, then the ball was in the plaintiff's court. *See* Perry, at 179–80, 272–73. The plaintiff could respond with his own demurrer, accepting the new facts alleged in avoidance but denying their legal effect, which would frame up an issue of law for the judge. *Id.* Or the plaintiff could respond with a traverse, joining issue on the merits and triggering a trial. *See id.* There were some other ways to procure judicial decision of a true question of law, such as the arcane concept of "express color" in trespass actions.[5] As far as counsel can determine, however, a defendant could never procure judicial resolution of disputed *facts* relevant to a dispositive affirmative defense like exhaustion.

Of course, this Court need not wade into the finer points of whether *Lee v. Willey* and the cases it relied on are correct. But it should not extend them to situations, like this one, where the relevant facts are intertwined with the merits.

---

[5] *See* Shipman §§ 200–202, at 350–55; Perry, at 274–76. Even then, if the issue of law was not "wholly foreign to the merits of the cause," Shipman § 202, at 354–55, and could not be "segregate[d] . . . from the remaining matters of fact," Perry, at 275, then the defendant could not withdraw the matter from the jury.

### III. PRECEDENT AND FUNCTIONAL CONSIDERATIONS CONFIRM A RIGHT TO JURY TRIAL ON DISPUTED ISSUES OF FACT RELEVANT TO EXHAUSTION WHEN THE FACTS ARE INTERTWINED WITH THE MERITS.

Modern precedent and functional considerations also support the conclusion that juries should resolve factual disputes relevant to exhaustion when the disputed facts are intertwined with the merits.

In the related context of civil actions presenting both legal and equitable claims, the Supreme Court has consistently held that the jury trial right cannot "be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action, or during its pendency." *Scott v. Neely*, 140 U.S. 106, 109–10 (1891); *see also Ross v. Bernhard*, 396 U.S. 531, 537–38, 538 n.10 (1970) ("[W]here equitable and legal claims are joined in the same action, [the] right to jury trial on the legal claims . . . must not be infringed."). Preserving the jury's fact-finding role "is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959) (citation omitted). Only "under the most imperative circumstances" can the jury trial right be compromised. *Id.* at 510–11.

As discussed above, the circuit courts (including this Court) have generally endorsed judicial fact-finding in the PLRA exhaustion context. But the case law has consistently recognized that a serious Seventh Amendment issue would be presented

if the disputed exhaustion facts were intertwined with the core merits of the case. When this Court decided that issues of fact regarding PLRA exhaustion were "a matter of judicial administration that could be decided in a bench trial," it signaled that the answer may well be different where the factual disputes concerning exhaustion were intertwined with other merits issues. *See Lee*, 789 F.3d at 678 & n.3. Reflecting a shared intuition that intertwinement implicates the jury trial right, most other Courts of Appeals to consider the question have noted similar caveats.[6]

District courts in the Second Circuit have repeatedly held in PLRA exhaustion cases that "when the underlying facts are entangled with those that underlie a plaintiff's substantive claims," the court "will leave it to the jury to determine the factual issues" intertwined with the § 1983 claim. *Gunn v. Ayala*, 2023 WL 2664342, at *10 (S.D.N.Y. Mar. 28, 2023). Take, for instance, *Stephens v. Venetozzi*, 2020 WL 7629124 (S.D.N.Y. Dec. 21, 2020). The plaintiff there sued several prison guards for assaulting him in retaliation for previous grievances. *Id.* at *1. The plaintiff also contended that the same guards threatened and beat him, thwarting him from taking

---

[6] *See Small v. Camden County*, 728 F.3d 265, 270 (3d Cir. 2013) ("[T]he Seventh Amendment is not implicated as long as the facts are not bound up with the merits of the underlying dispute."); *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011) ("[T]he factual disputes relating to exhaustion are not intertwined with the merits . . . ."); *Dillon v. Rogers*, 596 F.3d 260, 272 n.2 (5th Cir. 2010) ("We do not determine today who should serve as factfinder when facts concerning exhaustion also go to the merits of a prisoner's claim."); *but see Pavey v. Conley*, 544 F.3d 739, 741–42 (7th Cir. 2008) (recognizing a "peculiarity" where there was a "possible overlap between the factual issues relating to exhaustion and those relating to the merits," but failing to vindicate the plaintiff's Seventh Amendment right).

advantage of the grievance process through intimidation. *Id.* at *2. The court explained that, in determining whether administrative grievance procedures were available, it "necessarily" would have to credit one party's account of the merits. *Id.* at *3. The court's decision "would effectively be ruling on Plaintiff's substantive claim of excessive force." *Id.* Since that would defeat the plaintiff's "right to a jury's resolution of the merits of the ultimate dispute," the court allowed the claim to proceed to trial. *Id.* at *3–4 (quoting *Messa*, 652 F.3d at 310).[7]

Functional considerations also support jury resolution of intertwined exhaustion questions. Courts denying a jury trial for exhaustion questions have justified that decision on efficiency grounds. But where is the efficiency gain in a case, like this one, where the factual disputes relevant to exhaustion essentially subsume the merits and require an evidentiary hearing to evaluate the credibility of all the important witnesses?

---

[7] *See also, e.g.*, *Sanchez v. Nassau County*, 2023 WL 2457855, at *20–21 (E.D.N.Y. Mar. 11, 2023) (jury required where "the factual disputes relevant to PLRA exhaustion go to and are inextricably entangled with the merits of Plaintiff's underlying claims"); *Daum v. Doe*, 2016 WL 3411558, at *2 (W.D.N.Y. June 22, 2016); *Rickett v. Orsino*, 2013 WL 1176059, at *23 (S.D.N.Y. Feb. 20, 2013), *report and recommendation adopted*, 2013 WL 1155354 at *4 (S.D.N.Y. Mar. 21, 2013); *Wakeley v. Giroux,* 2014 WL 1515681 at *2 (M.D. Pa. Apr. 15, 2014). District courts are well-equipped to determine when exhaustion is intertwined with the merits. *See, e.g.*, *Battle v. S.C. Dep't of Corr.*, 2019 WL 926415, at *6–7 (D.S.C. Feb. 26, 2019) (finding no jury trial right where exhaustion was "not intertwined" where there was "overlapping evidence" but not overlapping "factual issues" (quoting *Allison v. Citgo Petrol. Corp.*, 151 F.3d 402, 423 n.21 (5th Cir. 1998))); *Njos v. Argueta*, 2015 WL 3405170, at *3 n.2 (M.D. Pa. May 26, 2015) (noting that a "possible overlap" between exhaustion and merits is not enough to implicate the jury right).

Perhaps a bench trial is still more efficient than a jury trial. But the difference is modest at best, and entitled to little weight as against the Seventh Amendment's strong preference for jury trial. After all, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## CONCLUSION

Justice Story once explained that "[t]he trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy." *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 446 (1830). This Court should reverse, and hold that Mr. Richards's intertwined exhaustion questions must be presented to a jury.

Respectfully submitted on September 28, 2023,

*s/ J. Scott Ballenger*
J. Scott Ballenger
Sean Gray (Third Year Law Student)
Lauren McNerney (Third Year Law Student)
Appellate Litigation Clinic
UNIVERSITY OF VIRGINIA
SCHOOL OF LAW
580 Massie Road
Charlottesville, VA 22903
202-701-4925

## CERTIFICATION OF COMPLIANCE

1. This brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, 14 point.

2. Exclusive of the table of contents; table of citations; statement in support of oral argument; certificate of compliance; certificate of service; and the designation of relevant district court documents, this brief contains 15 pages with 4,067 words.

3. I understand that a material misrepresentation can result in the court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic copy of the word or line printout.

*s/ J. Scott Ballenger*
Counsel for Appellant

## CERTIFICATE OF SERVICE

I certify that on September 28, 2023, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*s/ J. Scott Ballenger*
Counsel for Appellant

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Plaintiff-Appellant, per Sixth Circuit Rule 28(a), 28(a)(1)-(2), 30(b), hereby

designated the following portions of the record on appeal:

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Complaint | 04/23/2020 | R. 1 | 1–51 |
| Request for Jury Trial | 06/18/2020 | R. 9 | 10–12 |
| Perttu's Motion for Summary Judgment | 09/25/2020 | R. 35 | 111–68 |
| Richards's Motion for Summary Judgment | 03/12/2021 | R. 90 | 395–406 |
| Minutes of Bench Trial | 11/04/2021 | R. 156 | 748–49 |
| R&R | 12/03/2021 | R. 157 | 750–87 |
| Order Affirming R&R | 03/22/2022 | R. 169 | 865–69 |
| Notice of Appeal | 04/11/2022 | R. 172 | 878–79 |
| Bench Trial Transcript | 02/22/2023 | R. 184 | 914–1159 |